**(1) Trademark Infringement**

Between the Lines' use of *TWIHARDER* as a film title does not constitute infringement of Summit's Twihard or *Twilight* marks. Notwithstanding the fair use defense discussed above, given that the *TWIHARDER* is a "zany, surreal parody" of the *Twilight* motion pictures, there is no likelihood of consumer confusion with regard to the *TWIHARDER* title itself and the corresponding website www.twiharder.com (the "Website"). The second sentence on the main page of the Website clearly distinguishes itself from *Twilight* and fans of *Twilight* by stating:

> "If you are an intense fan of the Twilight Saga, then **you have nothing in common with the creators of "TWIHARDER"**! [emphasis added]"

a. Consumer Confusion

Because of the parodic nature of the film, the use of the TWIHARD mark in relation to *TWIHARDER* and the corresponding Website does not and will not cause consumer confusion as to Summit's affiliation with *TWIHARDER* and Website. Following the likelihood of confusion test as set out in *AMF v. Sleekcraft*[5], the danger of confusion diminishes automatically given that the *Twilight* motion pictures and a motion picture parody of the *Twilight* motion pictures are not in the same competitive market.[6] In other words, *TWIHARDER* would never serve as a substitute for the original *Twilight* motion pictures. An analysis of the *AMF v. Sleekcraft* factors[7] confirms that consumer confusion is completely unlikely. To begin with, "twihard" by definition is a combination of the words "Twilight" and "Die-Hard" to describe the "obsessive fans of the 'Twilight Saga' series of books by author Stephanie Meyer, and the film adaptations."[8] Twihard is a descriptive term commonly used by the public and the media to identify a specific group of the most die-hard *Twilight* fans. There are an abundance of uses of the word or variations of the word, including our client's use, which predates your purported trademark claims or usage. The word's definition demonstrates that any *Twilight* consumer, ranging from the casual audience member to "twihards" themselves, would never and could never be confused as to the source, sponsorship, or affiliation of the *TWIHARDER* film title, regardless of its similarities to the Twihard and *Twilight* marks. The *Twilight* saga has become such a widespread phenomenon and unavoidable component of recent pop culture, consumer confusion is extremely unlikely among even those who have never seen any of the original *Twilight* films.

---

[5] AMF v. Sleekcraft, 599 F.2d 341 (9th Cir. Cal. 1979).
[6] Courts have long held that parodies, and other forms of criticisms and commentaries, are outside the protectable markets for derivative works given the "unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions." Campbell v. Acuff-Rose Music, 510 U.S. 569, 592 (U.S. 1994).
[7] *AMF*, 599 F.2d at 348 (Factors Relevant to Likelihood of Confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by purchaser: (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines).
[8] Urban Dictionary: Twihard, www.urbandictionary.com/define.php?term=Twihard.