

BTL_000018

**Sheppard Mullin**

Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
310.228.3700 main
310.228.3701 main fax
www.sheppardmullin.com

Jill M. Pietrini
310.228.3723 direct
jpietrini@sheppardmullin.com

July 24, 2012

File Number: 22HF-165423

Dean R. Cheley, Esq.
DONALDSON & CALLIF
400 S. Beverly Drive, Suite 400
Beverly Hills, CA 90212

**VIA EMAIL AND U.S. MAIL**
DEAN@DONALDSONCALLIF.COM

Re:    **Infringement of Summit Entertainment's Intellectual Property derived from *Twilight* Motion Pictures**

Dear Dean:

This responds to your July 12, 2012 letter attempting to defend the use by your client Between the Lines Productions, LLC ("Between the Lines Productions") of the trademark TWIHARDER and other intellectual property owned by Summit Entertainment, LLC ("Summit"). The arguments raised in your letter are unpersuasive for the reasons set forth below, and Between the Lines Productions' settlement offer to merely (i) add a disclaimer to its website at www.twiharder.com and DVDs and (ii) modify the written content on the website is unacceptable. We reiterate the requests made in our June 27, 2012 letter to Between the Lines Productions and notify you that Summit will have no choice but to bring suit if Between the Lines Productions does not agree to each request.

**A.    Copyright Infringement**

You have asserted parody as a blanket defense to Between the Lines Productions' copyright infringement of Summit's intellectual property, including Summit's rights in its motion pictures ("*Twilight* Motion Pictures") and its TWILIGHT, TWIHARD, and TWILIGHT (Stylized) trademarks ("Twilight Marks") (collectively "Twilight IP"). Your analysis of the four factors is flawed.

1.    Purpose and Character of Use

The first factor in a fair use inquiry is the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes, such as criticism, comment, news reporting, teaching, scholarship or research. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). Between the Lines Productions' use, as you concede in your July 12, 2012 letter, is clearly commercial in nature. We find it hard to believe that Between the Lines Productions' movie *Twiharder* (the "Movie") is merely a "form of criticism and commentary" on the *Twilight* Motion Pictures when Between the Lines Productions has also proceeded to file a trademark application for the mark TWIHARDER and launched a wide array of merchandise for sale under the TWIHARDER mark and is selling such merchandise alongside of Between the Lines Productions. Further,

**Sheppard**Mullin

Dean R. Cheley, Esq.
DONALDSON & CALLIF
July 24, 2012
Page 2

Between the Lines Productions is seeking distribution of the Movie and apparently to time its release with *The Twilight Saga: Breaking Dawn – Part 2 ("Breaking Dawn – Part 2")*, the fifth motion picture of the *Twilight* Motion Pictures. Finally, the Movie does not comment on the *Twilight* Motion Pictures. Your citation to certain scenes[1] of the Movie does not illustrate any commentary; instead, the Movie appears to be merely a bad imitation of the *Twilight* Motion Pictures. In short, Between the Lines Productions is clearly attempting to cash in on the valuable goodwill of the *Twilight* Motion Pictures and Twilight Marks, rather than any non-commercial purpose.

    2.    <u>Nature of the Copyrighted Work</u>

The second factor looks at the nature of the copyrighted work, noting that fair use is harder to establish when creative works are copied rather than informational or functional works. *Acuff-Rose*, 510 U.S. at 586, citing *inter alia*, *Stewart v. Abend*, 495 U.S. 207, 237-238 (1994) (contrasting fictional short story with factual works) and *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 455 N. 40 (1984) (contrasting motion pictures with news broadcasts). The *Twilight* Motion Pictures are creative and entertainment works of authorship that fall squarely within the core of copyright's protective purposes. Your argument that this factor carries little weight is unsupported by case authority. Instead, this factor substantially weakens any argument by Between the Lines Productions that its use of the Twilight IP is in any way fair.

    3.    <u>Amount and Substantiality</u>

The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole. *Acuff-Rose*, 510 U.S. at 586. You incorrectly assert, without authority, that "a fairly extensive use of the copyrighted work is permitted given that a parodist can copy as much as is needed to 'conjure up' the original." While wholesale copying does not preclude fair use *per se*, copying an entire work "militates against a finding of fair use." *Worldwide Church v. Philadelphia Church*, 227 F.3d 1110, 1118 (9th Cir. 2000). Between the Lines Productions was not just "inspired" by the *Twilight* Motion Pictures, as you assert. Between the Lines Productions copied the entire storyline, characters, look and feel of the *Twilight* Motion Pictures, notably, *New Moon*. As such, Between the Lines Productions' actions cannot be shielded by an excuse of parody. Even in *Acuff-Rose*, the defendant copied only the opening guitar bass riff and first line of the words of musician Roy Orbison's *Pretty Woman* song, not the entire song.

    4.    <u>Potential Effect on the Market</u>

The fourth factor is the effect of the use upon the potential market for or value of the copyrighted work. *Acuff-Rose*, 510 U.S. at 589. You state that there is no market harm because the Movie is not a substitute for the *Twilight* Motion Pictures because it serves a different market purpose. Your conclusory statement bears no weight. "Since fair use is an affirmative defense, [a defendant] must bring forward favorable evidence about relevant

---

[1]    As mentioned in our telephone conversation, we would like to view the entire Movie, and ask that you provide us with a copy of the Movie.

# Sheppard Mullin

Dean R. Cheley, Esq.
DONALDSON & CALLIF
July 24, 2012
Page 3

markets." *Dr. Seuss Enter. v. Penguin Book USA*, 109 F.3d 1394, 1403 (9ᵗʰ Cir. 1997).  As noted, what the evidence does show is that the Movie is trying to launch this fall, approximately the same time frame as the launch of Summit's *Breaking Dawn - Part 2*, the final installment in the *Twilight* Motion Pictures, indubitably to ride on the coattails of Summit's advertising and promotion of its film.  And again, Between the Lines Productions is merchandising the Movie through one of Summit's licensees, CafePress[2].  Thus, you cannot seriously contend that the Movie will not have any effect on the market for the *Twilight* Motion Pictures.

In sum, Between the Lines Productions is liable for copyright infringement because none of the four factors in the fair use analysis weighs in favor of Between the Lines Productions.

## B.        Trademark Infringement

Your analysis with respect to trademark infringement is equally flawed.  Under the *Sleekcraft* test, Between the Lines Productions' use of TWIHARDER for movies and merchandise is likely to cause confusion with Summit's Twilight Marks.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9ᵗʰ Cir. 1979).  Between the Lines Productions' mark TWIHARDER is nearly identical to Summit's TWIHARD mark and in the same stylized font as Summit's TWILIGHT mark; the goods and services (motion pictures and merchandise) are the same, the channels of trade (including sales through the online retailer CafePress) are the same, and Between the Lines Productions' intent in selecting TWIHARDER is clearly to affiliate itself with the Twilight Marks.  Your assertion, then, that Between the Lines Productions and Summit's films are not in the "same competitive market" is incorrect.  And your allegation that Between the Lines Productions' use of TWIHARDER "predates" Summit's trademark use is illogical and contrary to your assertion that TWIHARDER is an alleged parody of TWIHARD.

Your comment that the Movie would never serve as a substitute for the *Twilight* Motion Pictures misconstrues the test for infringement under 15 U.S.C. § 1114 and § 1125(a)[3].  The test is likelihood of confusion as to source or as to affiliation, connection, sponsorship, or association.  It is a broad test.  Further, the Ninth Circuit recognizes initial

---

[2]        We have contacted CafePress about this matter and Between the Lines Productions' infringing merchandise (which also violates many of Summit's rules relating to Twilight merchandise created on CafePress) will be removed from the website.

[3]        Your reliance on *Dastar Corp. v. Twentieth Century Fox*, 539 U.S. 23 (2003) is misplaced.  In that case, the producer of the entertainment works was using television programs that had fallen into the public domain.  Here there is no question that the copyrights in the *Twilight* Motion Pictures, the trailers therefor, and photographs and artwork associated therewith are valid and subsisting.  And there is no question that Between the Lines Productions is using Summit's stylized font and logo in a confusingly similar way.  Thus, *Dastar* has no application to this case.  Nor does *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).

**Sheppard**Mullin

Dean R. Cheley, Esq.
DONALDSON & CALLIF
July 24, 2012
Page 4

interest confusion.  Therefore, even if consumers' confusion were dispelled after investigating the Movie further, that does not avoid liability.

Moreover, an assertion of parody "does not magically fend off otherwise legitimate claims of trademark infringement or dilution.  There are confusing parodies and non-confusing parodies."  *Dr. Seuss*, 109 F.3d at 1405, quoting MCCARTHY ON TRADEMARKS §31.38[1], at 31-216 (rev. ed. 1995).  Parody does not avoid a finding of infringement "where the purpose of the similarity is to capitalize on a famous mark's popularity for the defendant's own commercial use."  *Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991) ("Hard Rain" logo held an infringement of the "Hard Rock" logo).  There are multiple other cases where the argument of parody did not absolve the defendant of infringement or other violations of the plaintiff's trademark. Between the Lines Productions' Movie, its TWIHARDER merchandise, its registration and use of the domain name <twiharder.com>, its intended distribution of the Movie to coincide with the release of *Breaking Dawn – Part 2*, and its filing of a trademark application for TWIHARDER all indicate that Between the Lines Productions is seeking to commercially profit from Summit's *Twilight* Motion Pictures and Twilight Marks.

Between the Lines Productions has not only misappropriated the TWILIGHT and TWIHARD marks, but has copied the same font style of the TWILIGHT mark and the trade dress of the *Twilight* Motion Pictures and associated merchandise.  A nominative fair use defense requires that a defendant only use so much of a plaintiff's mark as is reasonably necessary to identify the plaintiff's product or service.  It is well established that use of one's logo is not fair use.  *New Kids on the Block v. New America Pub.*, 971 F.2d 302, 308 and n. 7 (9th Cir. 1992) ("Thus, a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering"); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969) ("Church did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem."); *see Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) ("As for the second and third steps of our nominative fair use analysis, Toyota suggests that use of the stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota. This is true: [defendants] could adequately communicate their message without using the visual trappings of the Lexus brand. [citation omitted]  Moreover, those visual cues might lead some consumers to believe they were dealing with an authorized Toyota affiliate.")  Between the Lines Productions' use of TWIHARDER crosses far beyond any alleged nominative fair use.

### C.    Trademark Dilution

Finally, the excuse of parody does not automatically trump claims for trademark dilution by tarnishment.  *See Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972).  In *Coca-Cola*, the defendant sold posters reading ENJOY COCAINE in a stylized font and red and white colors identical to that used in COCA-COLA advertisements. Defendant argued that such use was only a parody of COCA-COLA, namely, that "the poster was intended to be a spoof, satirical, funny, and to have a meaning exactly the opposite of the word content".  *Id.* at 1187.  However, the court granted a preliminary injunction based

**Sheppard**Mullin

Dean R. Cheley, Esq.
DONALDSON & CALLIF
July 24, 2012
Page 5

on both trademark infringement and dilution, referring to the defendant's "predatory intent, however humorous defendant considers it." *Id.*

Between the Lines Productions' use of TWIHARDER is equally predatory in intent. The Movie looks low budget and depicts scenes that appear sexually suggestive and tawdry, constituting dilution through harmful tarnishment of Summit's valuable intellectual property rights.

In sum, Between the Lines Productions is attempting nothing less than the wholesale exploitation of Summit's valuable intellectual property rights in the *Twilight* Motion Pictures and Twilight Marks for its own monetary gain, rather than any alleged attempt to practice its First Amendment rights.

Please provide Between the Lines Productions' written consent to Summit's requests set forth in our June 27, 2012 letter no later than **Monday, July 30, 2012**.

Nothing contained in this letter, nor any act or omission to act by Summit is intended or should be deemed to be a waiver, abridgment, alteration, modification or reduction of any rights, claims, defenses or remedies that Summit may have in regard to this matter and all such rights, claims, defenses and remedies, whether at law or in equity, are hereby expressly reserved.

Very truly yours,

Jill M. Pietrini
SHEPPARD MULLIN RICHTER & HAMPTON LLP

JMP:SH
cc:     Triad Web Design
        David C. Friedman, Esq.
        Rachel Kimbrough, Esq.
        Robert Mason, Esq.

SMRH:406216356.1