

BTL_000032

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
310.228.3700 main
310.228.3701 fax
www.sheppardmullin.com

310.228.3723 direct
jpietrini@sheppardmullin.com

January 15, 2013

File Number: 22HF-165423

SETTLEMENT DISCUSSIONS
PER FRE 408

**VIA EMAIL AND U.S. MAIL**
DEAN@DONALDSONCALLIF.COM

Dean R. Cheley, Esq.
DONALDSON & CALLIF
400 S. Beverly Drive, Suite 400
Beverly Hills, CA 90212

Re:   **Infringement of Summit Entertainment's Intellectual Property derived from *Twilight* Motion Pictures**

Dear Dean:

Thank you for your hospitality in hosting a screening at your offices on December 20, 2012 of the *Twiharder* motion picture film by your client, Between the Lines Productions.

Summit Entertainment ("Summit") has considered your client's offer to change the film's name to *Twilife* in exchange for a release of all claims. However, our viewing only serves to confirm that the *Twiharder* film commits wholesale trademark and copyright infringement of the trademark TWIHARDER and other intellectual property owned by Summit. Not only does the film use the confusingly trademark TWIHARDER, but it also uses an identical font style, color, artwork, and graphics contained in the films as well as the DVDs and merchandise, the same story line verbatim and dialogue, similar costumes, and character names and myriad scenic, visual, and musical references to the films.

Summit cannot agree to settlement of this dispute short of Between the Lines Productions' agreement to stop all display and efforts to distribute the *Twiharder* film, including any use on any websites or solicitations for sale or distribution.

Further, we are not persuaded by the alleged fair use defense of parody and the citations of *Caterpillar Inc. v. Walt Disney Company*, 287 F. Supp.2d 913 (C.D. Ill. 2003), *Suntrust v. Houghton Mifflin*, 268 F.3d 1257 (11th Cir. 2001) and the *Vampires Suck* motion picture film, because these cases are distinguishable on their facts from the *Twiharder* film for the following reasons:

In *Caterpillar*, the Court rejected Caterpillar's claim of infringement and dilution based on Disney's footage of Caterpillar bulldozers being driven by villains in the movie

**SheppardMullin**

Dean R. Cheley, Esq.
DONALDSON & CALLIF
January 15, 2013
Page 2

*George of the Jungle 2*. The court found that Disney was not poaching or free riding on Caterpillar's mark to help sales of Disney's own product:

> Caterpillar's position seems to be simply that its products and trademarks appeared in *George 2* without authorization in four scenes and that the appearance of its trademarks and products should be sufficient to constitute unfair competition under § 43(a) of the Lanham Act. Part of what drives the Court's discomfort with Caterpillar's position is the fact that the appearance of products bearing well known trademarks in cinema and television is a common phenomenon. For example, action movies frequently feature automobiles in a variety of situations.

*Caterpillar*, 287 F. Supp.2d at 919. The Court did not find dilution by tarnishment either because viewers would understand that the Caterpillar bulldozers are inanimate objects without any evil anthropomorphic attributes. The *Twiharder* film is distinguishable because it copies *the whole* of Summit's films *Twilight* and *The Twilight Saga: New Moon*, not just a couple of scenes, as well as parts of *The Twilight Saga: Eclipse*, and the intentionally sexual, vulgar, and tawdry nature of the *Twiharder* film tarnishes the essential, intrinsic, and well-known wholesomeness of the *Twilight* Motion Pictures.

In *Suntrust*, the 11th Circuit vacated the district court's preliminary injunction against distribution of Alice Randall's book *The Wind Done Gone*, a purported parody of Margaret Mitchell's famous novel, *Gone with the Wind* which retold the classic story from a slave's perspective and was allegedly intended to serve as a critical commentary on the Antebellum South. The 11th Circuit remanded the case, noting that Ms. Randall likely had a copyright fair use defense. *Suntrust*, 268 at 1277. However, the 11th Circuit also noted that a preliminary injunction was improper not only because of a possible fair use defense but also because monetary damages would be an adequate remedy. *Id.* It is not at all evident that the 11th Circuit was correct in its order, and the U.S. Supreme Court very likely might have disagreed with the 11th Circuit if the parties had not settled the case. Moreover, the 11th Circuit found that *The Wind Done Gone* was transformative to the extent that it was retold in the first person, rather than the third person and that "the story was transformed into a very different tale" that had a "social benefit" by "shedding light on an earlier work". *Id.* at 1270-71. The *Twiharder* film includes nothing that transforms the *Twilight* Motion Pictures, given that it is a poor scene-by-scene retelling, nor does it shed any light, provide critical commentary, or provide any other social value justifying a fair use defense. The film is merely an exploitative attempt for "monetary gain" at the expense of Summit's valuable intellectual property. *Id.* at 1269.

Finally, the *Vampires Suck* film may focus on the *Twilight* Motion Pictures, but also spoofs other vampire genre films, such as *Buffy the Vampire Slayer, Vampire Diaries*, and *True Blood* and makes reference to other entertainment subjects, such as *The Jersey Shore, Dear John, Gossip Girl*, Taylor Swift, Jonas Brothers, The Black Eyed Peas, etc. This is far