# DONALDSON + CALLIF

March 6, 2013

**VIA U.S. MAIL AND EMAIL**

Jill Pietrini
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
[jpietrini@sheppardmullin.com]

RE:   **BETWEEN THE LINES PRODUCTIONS, LLC /** *TWIHARDER* **/ SETTLEMENT DISCUSSIONS**

Dear Ms. Pietrini,

Although the *Twiharder* film admittedly involves a particular brand of in-your-face humor, it certainly falls short of tarnishing the "essential, intrinsic, and well-known wholesomeness" of the *Twilight* Motion Pictures. After all, the *Twilight* franchise itself subtly deals with a variety of mature themes including teen pregnancy, ephebophilia, addiction, teen infatuation and depression. The main plot centers around the lustful and eventually sexual relationship between a seventeen year old girl and a male character who is nearly 100 years her senior. The *Twilight* saga is not made wholesome simply because these characters avoid premarital sex. This is especially true when the sexual tension between them is constantly depicted onscreen and is a central storyline of the films. Other adult themes are present throughout the films including graphic displays of violence. In one gruesome scene in particular, Bella is nearly beaten to death after being brutally attacked by a vampire. In an attempt to save her, Edward nearly kills her himself when he sucks too much blood from her wrist because he's unable to control his desire for her blood. There are constant references to addiction and infatuation such as when Edward refers to Bella as his "own personal brand of heroin" in describing his uncontrollable lust for her. *Twilight* passes off these mature underlying themes as family entertainment. Indeed, as your colleague mentioned in our meeting, the author herself is a devout Mormon and tries to bring religious values into her books.

It is precisely this contradiction between the wholesome image that the *Twilight* franchise claims to portray and the actual underlying adult themes present in the saga, that the *Twiharder* film successfully parodies. *Twiharder* pokes fun at the overly lustful characters and dialogue, bad acting, absurd plot lines, and veiled mature themes. Various scenes depict awkward lip

Michael C Donaldson    Lisa A Callif    Dean R Cheley    Christopher L Perez
400 South Beverly Drive, Suite 400, Beverly Hills, California, 90212   Office 310-277-8394   Fax 310-277-4870

BTL_000037

biting, extra sparkly vampires, overly dramatic crying which goes on for days, and excessively long, lustful gazes. The parody repeatedly comments on the age difference between the two main characters of *Twilight* and uses a variety of spoofs and references to other popular culture subjects to do so, such as the television show, *To Catch A Predator*. The *Twiharder* film also repeatedly comments on the cult-like fan base, so called "Twihards" (the name for *Twilight's* die-hard fans) and celebrity status of the actors. These examples of critical commentary are found throughout the *Twiharder* film and provide the same type of social value which justified a fair use defense in *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001). Like most parody films, *Twiharder* uses absurd humor and ridiculous scenarios to provide commentary on the original work. While your client may find the film to be distasteful or offensive, it is still afforded full protection under the First Amendment (See e.g. *Burnett v. Twentieth Century Fox Film Corp.* 491 F.Supp.2d 962, 974 (2007) where the court held that even a crude, unflattering parody qualified for fair use protection and thus, was not subject to a trademark dilution claim).

In *Burnett*, the animated television show *Family Guy* spoofed the celebrity Carol Burnett and a character she made famous on the Carol Burnett Show, "Charwoman." The parody was particularly offensive as it depicted Ms. Burnett's character "Charwoman" working as a janitor at a porn shop. The animated figure was shown mopping the floor next to blow up dolls, x-rated movies, and curtained video booths while a slightly altered version of Carol's theme song from *The Carol Burnett Show* played. *Id.* at 966. Ms. Burnett and the company through which she did business sued the television network for copyright infringement and violation of the Lanham Act among other claims. Citing *Mattel, Inc. v. MCA Records, Inc.* 296 F.3d 894 (2002) the court stated that a dilution action only applies to purely commercial speech and that parody is a form of noncommercial expression if it does more than propose a commercial transaction. *Id.* at 974 [citations omitted]. The court found the episode to be a parodic work constituting noncommercial speech, and therefore, it was not subject to a trademark dilution claim. *Id.* at 974. The *Twiharder* film is analogous to the *Family Guy* episode in *Burnett* in that even though both works may be offensive to some viewers, they both constitute noncommercial speech and are therefore subject to a fair use defense.

A second case that struck down a claim for dilution by tarnishment because the work was a protected parody is *Mattel, Inc. v. MCA Records, Inc.* 296 F.3d 894 (2002). In that case, the manufacturers of the "Barbie" doll brought action against multiple music companies who produced, marketed and sold the popular song, "Barbie Girl" for trademark dilution and infringement. *Id.* at 899. The court held that use of the mark fell within the noncommercial use exception in the Federal Trademark Dilution Act. The song makes fun of Barbie and the values that the band claimed the doll represents. Mattel argued that the song was inappropriate for young girls and therefore tarnished their mark. *Id.* at 901-903.