SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Theodore C. Max (TM1742)
tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Jill M. Pietrini (*pro hac vice* application to be filed)
jpietrini@sheppardmullin.com
Paul A. Bost (*pro hac vice* application pending)
pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel.: 310-228-3700
Fax: 310-228-3701
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETWEEN THE LINES PRODUCTIONS, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>LIONS GATE ENTERTAINMENT CORP. and SUMMIT ENTERTAINMENT, LLC,<br><br>Defendants. | Case No.: 13 Civ. 3584 (JSR)<br><br>ECF Case<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA** |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF RELEVANT FACTS | 2 |
| | A. THE PARTIES | 2 |
| | B. THE FACTS LEADING UP TO PLAINTIFF'S COMPLAINT | 3 |
| III. | THE ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA | 4 |
| | A. THE STANDARD FOR ADJUDICATING DEFENDANTS' MOTION TO TRANSFER | 4 |
| | B. THIS CASE COULD HAVE BEEN AND SHOULD HAVE BEEN BROUGHT IN THE CENTRAL DISTRICT OF CALIFORNIA | 5 |
| | C. TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA IS CONVENIENT TO ALL OF THE PARTIES AND IN THE INTERESTS OF JUSTICE | 5 |
| | 1. PLAINTIFF'S CHOICE OF FORUM | 6 |
| | 2. THE CONVENIENCE OF THE WITNESSES | 7 |
| | 3. THE LOCATION OF RELEVANT DOCUMENTS AND RELATIVE EASE OF ACCESS TO SOURCES OF PROOF | 9 |
| | 4. THE CONVENIENCE OF THE PARTIES | 9 |
| | 5. THE LOCUS OF OPERATIVE FACTS | 10 |
| | 6. THE AVAILABILITY OF PROCESS TO COMPEL THE PRESENCE OF UNWILLING WITNESSES | 11 |
| | 7. THE RELATIVE MEANS OF THE PARTIES | 12 |
| | 8. THE FORUM'S FAMILIARITY WITH THE GOVERNING LAW | 12 |
| | 9. TRIAL EFFICIENCY AND THE INTERESTS OF JUSTICE | 12 |
| IV. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albert Fadem Trust v. Duke Energy Corp.*
214 F. Supp.2d 341 (S.D.N.Y. 2002) ......................................................................................... 5

*Anadigics, Inc. v. Raytheon Co.*
903 F. Supp. 615 (S.D.N.Y. 1995) ........................................................................................... 11

*Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*
734 F. Supp. 54 (N.D.N.Y. 1990) .............................................................................................. 7

*Arrow Electronics, Inc. v. Ducommun, Inc.*
724 F. Supp. 264 (S.D.N.Y. 1989) ........................................................................................... 11

*In re Cuyahoga Equipment Corp.*
980 F.2d 110 (2d Cir. 1992) ....................................................................................................... 4

*D.H. Blair & Co., Inc. v. Gottdiener*
462 F.3d 95 (2d Cir. 2006) ......................................................................................................... 4

*In re E. Dist. Repetitive Stress Injury Lit.*
850 F. Supp. 188 (E.D.N.Y. 1994) ....................................................................... 6, 7, 9, 11, 13

*Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*
486 F. Supp. 529 (S.D.N.Y. 1980) ....................................................................................... 6, 13

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*
178 F. Supp.2d 459 (S.D.N.Y. 2002) ........................................................................................ 6

*Factors Etc., Inc. v. Pro Arts, Inc.*
579 F.2d 215 (2d Cir. 1978) ....................................................................................................... 4

*Falconwood Financial Corp., v. Griffin*
838 F. Supp. 836 (S.D.N.Y. 1993) ............................................................................................ 9

*Firestone v. Galbreath*
722 F. Supp. 1020 (S.D.N.Y. 1989) .......................................................................................... 6

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501, 67 S. Ct. 839 (1947) .......................................................................................... 11

*Hernandez v. Graebel Van Lines*
761 F. Supp. 983 (E.D.N.Y. 1991) ...................................................................................... 9, 11

*Mobil Oil Corp. v. SEC*
550 F. Supp. 67 (S.D.N.Y. 1982) .............................................................................................. 9

*Mobile Video Servs., Ltd. v. National Ass'n of Broadcast Employees & Technicians*
   574 F. Supp. 668 (S.D.N.Y. 1983) ......................................................................... 10

*Morales v. Navieras de Puerto Rico*
   713 F. Supp. 711 (S.D.N.Y. 1989) ......................................................................... 10

*National Union Fire Ins. Co. v. Landry*
   677 F. Supp. 704 (S.D.N.Y. 1987) ........................................................................... 5

*Royal Ins. Co. of Am. v. United States*
   998 F. Supp. 351 (S.D.N.Y. 1998) ......................................................................... 12

*Saminsky v. Occidental Petroleum Corp.*
   373 F. Supp. 257 (S.D.N.Y. 1974) ........................................................................... 7

*In the Matter of the Application for an Order Quashing a December 19, 1997 Deposition Subpoena of Price Waterhouse LLP*
   182 F.R.D. 56 (S.D.N.Y. 1998) ............................................................................... 8

*Twinde v. Threshold Pharmaceuticals, Inc.*
   2007 U.S. Dist. LEXIS 96269 (S.D.N.Y. 2007) (Rakoff, J.) .......................... 1, 4, 5, 6, 11

*U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*
   800 F. Supp. 1076 (E.D.N.Y. 1992) ..................................................................... 9, 10

*Unique Industries, Inc. v. Lisa Frank, Inc.*
   1994 U.S. Dist. LEXIS 13590 (S.D.N.Y. 1994) ........................................................ 4

*Wils v. Schulman*
   1991 U.S. Dist. LEXIS 10173 (S.D.N.Y. 1991) ............................................ 4, 5, 7, 11

*Wyndham Associates v. Bintliff*
   398 F.2d 618 (2d Cir. 1968) .................................................................................. 13

Statutes

28 U.S.C. § 1391(b)(1) ................................................................................................. 5

28 U.S.C. § 1404(a) .................................................................................................. 1, 4

Other Authorities

Fed.R.Civ.P. 12(b) ....................................................................................................... 1

Fed.R.Civ.P. 12(b)(3) ................................................................................................... 1

Fed.R.Civ.P. 45(c)(3)(A)(ii) ........................................................................................ 8

I. **INTRODUCTION**

Plaintiff Between the Lines Productions, LLC's ("Plaintiff") 219-page Complaint filed against defendants Lions Gate Entertainment Corp. ("Lions Gate") and Summit Entertainment, LLC ("Summit") (collectively, "Defendants") is a lengthy narrative of irrelevant commentary and is substantively meritless. Nevertheless, because Defendants are obliged to litigate -- and intend to vigorously dispute -- Plaintiff's allegations and intend to raise counterclaims thereto, the Court should transfer this action from the Southern District of New York to the Central District of California pursuant to its authority under 28 U.S.C. § 1404(a) in order that it may proceed in a venue convenient to the parties and conducive to the interests of justice, instead of its present, arbitrary venue.[1] This case is similar to *Twinde v. Threshold Pharmaceuticals, Inc.*, 2007 U.S. Dist. LEXIS 96269, *3 (S.D.N.Y. 2007) (Rakoff, J.), wherein this Court granted the defendants' motion to transfer, which, like the present motion, was filed shortly after the plaintiff's initiation of the case and prior to the defendants' filing of an answer or Fed.R.Civ.P. 12(b) motion. This case is an even clearer candidate for transfer than the *Twinde* case -- most notably, Plaintiff and Defendants *all* have their principal places of business in the Los Angeles, California metropolitan area; all or the vast majority of third party witnesses known to the parties or referenced in the Complaint reside in the Los Angeles metropolitan area; and no witnesses known to the parties or referenced in the Complaint are within the subpoena power of this District, yet all -- or almost all -- are within the subpoena power of the Central District of California. There is simply no connection between this case and the Southern District of New York other than the location of Plaintiff's new counsel. In contrast, the connections between this action and the Central District of California are many and substantial. Although Plaintiff may contend that its counsel is located in New York and that favors venue in this District, district

---

[1] Defendants originally intended to include with this motion a motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. Upon further consideration, it is clear that the appropriate remedy with respect to venue is not dismissal, but transfer.

1

courts in the Second Circuit have deemed the location of counsel irrelevant to the transfer calculus.

In sum, transfer of this matter from this District to the Central District of California serves the interests of justice and the convenience of the parties.

## II. STATEMENT OF RELEVANT FACTS

### A. The Parties

Plaintiff is a California limited liability company with a principal place of business in Los Angeles. (Docket No. 1 ("Complaint") ¶ 14.) Its individual members and owners are also residents of the State of California. (Complaint ¶ 15.)

Lions Gate is a corporation organized under the laws of British Columbia, Canada; it does not have an office in Canada. (Declaration of Rachel Kimbrough ("Kimbrough Decl.") ¶ 2.) Lions Gate's principal place of business is in Santa Monica, California. Lions Gate's operations are principally handled by its wholly-owned subsidiary Lions Gate Entertainment Inc. As of May 24, 2013, Lions Gate had 636 full time employees, the vast majority of whom work for Lions Gate Entertainment Inc. and in its principal office in Santa Monica. (*Id.*) Lions Gate's principal place of business has always been located in Santa Monica, California since its formation in 1997. Lions Gate operates a small office in New York, New York with only 14 employees, none of whom are corporate officers or are involved in the present dispute. (*Id.*)

Summit is a Delaware limited liability company. Its principal office is also in Santa Monica, California and always has been since its predecessors' formation in 1990. (Kimbrough Decl. ¶ 3.) Lions Gate has one employee in New York, New York who is dedicated to Summit matters; she is not a corporate officer and has no involvement in the present dispute. (*Id.*) Summit, not Lions Gate or Lions Gate Entertainment Inc., is the producer and distributor of the successful and famous motion picture *Twilight* and its equally successful and famous sequels, namely, *The Twilight Saga: New Moon* ("*New Moon*"), *The Twilight Saga: Eclipse*, *The Twilight Saga: Breaking Dawn - Part 1*, and *The Twilight Saga: Breaking Dawn - Part 2* (collectively, the "*Twilight* Motion Pictures"). (Kimbrough Decl. ¶ 4.)

2

B.     **The Facts Leading Up to Plaintiff's Complaint**

Plaintiff produced a motion picture entitled *TwiHarder* ("Plaintiff's Motion Picture") -- purportedly a parody of *New Moon* -- from April 16, 2010 through May 16, 2010 in "various sites throughout the Los Angeles, California area." (Complaint ¶ 169.) On June 27, 2012 and shortly after it became aware of Plaintiff's Motion Picture, Summit -- represented by the undersigned counsel -- sent Plaintiff a cease and desist letter based on its belief that Plaintiff's Motion Picture and sale of merchandise related thereto infringed Summit's valuable intellectual property derived from the *Twilight* Motion Pictures. (Complaint ¶ 250; Declaration of Paul A. Bost ("Bost Decl.") ¶ 2.) On July 12, 2012, the law firm of Donaldson & Callif, which is located in Beverly Hills, California, responded to Summit's cease and desist letter on Plaintiff's behalf and disputed the merits of Summit's claims. (Complaint ¶¶ 242, 253; Bost Decl. ¶ 3.) Plaintiff and Summit thereafter exchanged further correspondence, all sent from respective counsel's California offices, debating the merits of their respective positions and discussing terms of potential settlement over the course of several months in 2012 and 2013. (Bost Decl. ¶ 4). On December 20, 2012, Summit representatives and its counsel convened with Plaintiff's counsel at Donaldson & Callif's Beverly Hills office for a screening of Plaintiff's Motion Picture. (Bost Decl. ¶ 5.)

Plaintiff alleges that by virtue of Defendants' claim of infringement, it was denied insurance coverage allegedly critical to the distribution of its Motion Picture. All of the third parties relevant to the alleged denial of this insurance coverage are located in or around Los Angeles, California. Gravitas Ventures, LLC -- the alleged prospective distributor of Plaintiff's Motion Picture (Complaint ¶¶ 215-231) -- is a California limited liability company located in El Segundo, California[2]. (Bost Decl. ¶ 6, Ex. A.) American Entertainment Insurance -- Plaintiff's alleged broker for E&O insurance (Complaint ¶¶ 232-241) -- has its principal place of business in Hollywood, California. (Bost Decl. ¶ 7, Ex. B.) As mentioned above, Donaldson & Callif- --

---

[2]   El Segundo is located immediately south of Los Angeles International Airport.

3

Plaintiff's attorney prior to the initiation of this lawsuit and the law firm that allegedly provided Plaintiff with a "fair use legal opinion" as to Plaintiff's Motion Picture (Complaint ¶¶ 242-247) -- is located in Beverly Hills, California. (Bost Decl. ¶ 5.) Chubb Insurance ("Chubb") -- the carrier that allegedly declined coverage for Plaintiff's Motion Picture allegedly after reviewing Summit's cease and desist letter and the opinion of its "independent clearance counsel" (Complaint ¶¶ 254-255) -- is headquartered in Warren, New Jersey. However, Chubb maintains a Los Angeles office along with four other California offices (Bost Decl. ¶ 8, Ex. C), and it is likely that one of its representatives in California handled the analysis and the initial offer of coverage and subsequent decline of coverage, not one of its representatives in Warren or, for that matter, New York.

### III. THE ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

#### A. The Standard for Adjudicating Defendants' Motion to Transfer

28 U.S.C. § 1404(a) sets forth the circumstances under which a court may transfer a civil action: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Defendants, as the movants, bear the burden of "proving the propriety of a § 1404(a) transfer." *See Wils v. Schulman*, 1991 U.S. Dist. LEXIS 10173, *2-3 (S.D.N.Y. 1991) (motion to transfer action from the Southern District of New York to the Central District of California granted), *citing Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). "Transfer decisions are committed to the court's sound discretion." *Unique Industries, Inc. v. Lisa Frank, Inc.*, 1994 U.S. Dist. LEXIS 13590, *4 (S.D.N.Y. 1994), *citing In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (defendant's motion to transfer granted). "District courts have broad discretion in making determinations of convenience . . . and notions of convenience and fairness are considered on a case-by-case basis." *Twinde*, 2007 U.S. Dist. LEXIS at *3, *citing D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

4

### B. This Case Could Have Been and Should Have Been Brought in the Central District of California

"Before . . . a motion to transfer can be granted, the court must first consider whether the transferee court is one in which the action could have been brought." *Wils*, 1991 U.S. Dist. LEXIS at *3, *citing National Union Fire Ins. Co. v. Landry*, 677 F. Supp. 704, 708 (S.D.N.Y. 1987). In other words, as a threshold matter, the transferee court must have personal jurisdiction over the parties and be a proper venue. There is no doubt that this case could and should have been brought in the Central District of California. The Central District of California has personal jurisdiction over Plaintiff, which is a California limited liability company with its principal place of business in Los Angeles, California. Likewise, there is no dispute that the Central District of California has personal jurisdiction over Defendants, whose principal offices are in Santa Monica, California, such that venue is appropriate in the Central District of California. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.")

### C. Transfer to the Central District of California is Convenient to All of the Parties and in the Interests of Justice

In determining whether transfer of a civil action is convenient and in the interests of justice, courts commonly consider the following nine factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Twinde*, 2007 U.S. Dist. LEXIS at *2-3, *citing Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp.2d 341, 343 (S.D.N.Y. 2002). **Each of the above factors relevant to this case weigh in favor of transfer of this action to the Central District of California.**

1.   <u>Plaintiff's Choice of Forum</u>

Although a plaintiff's choice of forum is typically allotted significant weight in determining whether to transfer a matter, "where the plaintiff is foreign, its choice of forum is entitled to less weight." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp.2d 459, 468 (S.D.N.Y. 2002); *see also Firestone v. Galbreath*, 722 F. Supp. 1020, 1029 (S.D.N.Y. 1989) ("courts no longer give overriding consideration to a plaintiff's choice of forum 'especially when plaintiff brings suit outside his own home forum'"); *Twinde*, 2007 U.S. Dist. LEXIS at *3 ("While plaintiffs' choice of forum is normally given considerable weight, here the choice of the Southern District of New York is so patently artificial as to deserve less consideration . . . [N]one of the plaintiffs resides in New York, while all of the defendants reside in California.") Where a plaintiff's choice of forum has no connection with events which gave rise to the claim for review, the plaintiff's choice is entitled to less weight. *See In re E. Dist. Repetitive Stress Injury Lit.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) ("little deference" shown to plaintiff's choice of forum when events giving rising to claim occurred outside the Eastern District of New York); *Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*, 486 F. Supp. 529, 537 (S.D.N.Y. 1980) ("The trend towards reducing the emphasis placed upon plaintiff's choice of venue has seen particular application when, as here, the operative facts upon which litigation is brought bear little or no material connection to the chosen district.")

Here, Plaintiff's choice of forum is entitled to no weight given that its principal place of business is in California and it has no offices or presence otherwise in New York. Plaintiff's choice of forum has <u>no connection</u> with the events giving rising to its allegations and claims. Plaintiff is located in Los Angeles, filmed its Motion Picture in and around Los Angeles, the parties' correspondences which precipitated this action were exchanged between their counsel in Los Angeles, and their one meeting to view the infringing Motion Picture prior to the initiation of this action occurred in Beverly Hills, California. Plaintiff's forum selection of the Southern District of New York is even more "artificial" than that at issue in *Twinde*, where, at least, some

6

of the events giving rise to the litigation occurred in this District. Accordingly, Plaintiff's choice of forum should not be entitled to any deference.

        2.    <u>The Convenience of the Witnesses</u>

The convenience of witnesses is the most powerful factor governing the decision to transfer a case. *See Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 259 (S.D.N.Y. 1974). "Courts consider the convenience of witnesses both to minimize the burden they must face, and to secure live testimony at trial." *In re E. Dist. Repetitive Stress*, 850 F. Supp. at 194. In this case, <u>all</u> party witnesses are located in the Los Angeles area. (Kimbrough Decl. ¶ 5; Complaint ¶¶ 14-15), *see Wils*, 1991 U.S. Dist. LEXIS at *5 (location of witnesses weighed in favor of transfer; "[a]ll the witnesses relevant to the issue of liability are located in California, and bringing them to New York would result in substantial inconvenience to them and substantial expense to the parties.").

Although the convenience of party witnesses is worthy of consideration, "the convenience of non-party witnesses is a more important factor." *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990). <u>In this case, virtually all of the prospective non-party witnesses set forth in Plaintiff's Complaint are located in the Los Angeles area:</u>

- *Gravitas Ventures, LLC* -- the alleged prospective distributor of Plaintiff's Motion Picture (Complaint ¶¶ 215-231) -- is a California limited liability company located in El Segundo, California. (Bost Decl. ¶ 6, Ex. A.)
- *American Entertainment Insurance* -- Plaintiff's alleged broker for E&O insurance (Complaint ¶¶ 232-241) -- has its principal place of business in Hollywood, California. (Bost Decl. ¶ 7, Ex. B.)
- *20th Century Fox* -- the company that released *Vampires Suck* (Complaint ¶¶ 130-145) -- has its principal place of business in Los Angeles, California. (Bost Decl. ¶ 9.)
- *Donaldson & Callif* -- Plaintiff's counsel prior to the initiation of this case and the

7

law firm that allegedly provided Plaintiff with a "fair use legal opinion" as to Plaintiff's Motion Picture (Complaint ¶¶ 242-247) -- is located in Beverly Hills, California.

Chubb -- the carrier that allegedly declined coverage for Plaintiff's Motion Picture (Complaint ¶¶ 254-55) -- is headquartered in Warren, New Jersey. However, Chubb maintains a Los Angeles office and several other California offices (Bost Decl. ¶ 8, Ex. C), and it is very likely that one of its representatives in California handled the analysis and the initial offer of coverage and subsequent decline of coverage. In such a case, not only would proceeding in the Southern District of New York inconvenience this witness, but this witness would not be within the subpoena power of the Southern District of New York. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii) (requires a court to quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person); *In the Matter of the Application for an Order Quashing a December 19, 1997 Deposition Subpoena of Price Waterhouse LLP*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work. That the Rule focuses on the individual is supported by the fact that there is no such limitation regarding production by a nonparty of documents. Moreover, this focus is apparent both from the Rule's reference to 'a person who is not a party or an officer of a party ' and the ['regularly transacts business in person'] requirement.")

There are no witnesses -- party or nonparty -- located in New York. If the Court were to deny this motion, all of the third parties identified above would have to appear by deposition testimony at trial because neither party could compel them to appear live at trial.

Accordingly, this factor weighs heavily in favor of transfer.

8

### 3. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

"The location of books and records is entitled to some weight when determining whether a case should be transferred." *In re E. Dist. Repetitive Stress*, 850 F. Supp. at 194, *citing Mobil Oil Corp. v. SEC*, 550 F. Supp. 67, 71 (S.D.N.Y. 1982). The location of relevant documents is intertwined with the location of witnesses able to testify to said documents. *See Falconwood Financial Corp., v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993) (although discovery rules permit defendants to compel document production in certain instances by non-parties outside of transferor court's subpoena power, without transfer, defendants could not compel testimony of author of documents; motion to transfer granted).

Here, all of Summit's documents that are relevant to the claims asserted by Plaintiff and the impending counterclaims that Summit will file are located in California. The same is true for Lions Gate (to the extent it has any relevant documents)[3] and presumably for Plaintiff. Indeed, Plaintiff does not allege that it maintains an office in New York, and therefore all of its documents are presumably also located at its place of business in California. Largely for the same reasons that the locations of the parties and the non-party witnesses weighs heavily in favor of transfer, this factor weighs in favor of transfer.

### 4. The Convenience of the Parties

In determining which venue is most convenient to the parties, a "logical starting point is a consideration of the residence of the parties." *U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992) (defendant's principal place of business was in transferee district and plaintiff's principal place of business was not in transferor or transferee districts; motion to transfer granted.) The convenience to the parties is to be distinguished from convenience to a party's counsel, which is given little or no weight. *See Hernandez v. Graebel*

---

[3] Lions Gate was not involved in Summit's cease and desist letters and did not produce the *Twilight* Motion Pictures. As such, Lions Gate is not even a proper party in this case.

9

*Van Lines*, 761 F. Supp. 983, 988 (E.D.N.Y. 1991) ("any inconvenience that might enure to counsel is unpersuasive and generally not a factor to consider"; motion to transfer granted.)

For reasons already elucidated above, the trial of this civil action in the Central District of California is significantly more convenient to the parties than proceeding in the Southern District of New York. All parties have their respective principal places of business in the Los Angeles area, and the party and non-party witnesses that are likely to testify at trial are located in the Los Angeles area. Plaintiff cannot argue that the Southern District of New York is a more convenient forum when neither it nor any of the relevant witnesses are located in New York and none of the operative facts occurred in New York. *See Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 713 (S.D.N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico he does not, nor can he, seriously argue that New York is a more convenient forum than Puerto Rico, especially when none of the operative facts occurred in New York, but rather occurred in Puerto Rico"; motion to transfer to Puerto Rico granted).

The *only* tie to the Southern District of New York for this case is the location of Plaintiff's counsel, which, as noted, should not be afforded any weight. Furthermore, Plaintiff has attorneys in the Los Angeles area who had written and oral communications and meetings with Summit prior to the initiation of this suit.

In sum, this factor weighs heavily in favor of transfer.

5.   The Locus of Operative Facts

When adjudicating a motion to transfer, "[w]here the operative facts occurred is an obvious factor to consider." *See U.S. Fidelity*, 800 F. Supp. at 1081, *citing Mobile Video Servs., Ltd. v. National Ass'n of Broadcast Employees & Technicians*, 574 F. Supp. 668, 670-71 (S.D.N.Y. 1983). Plaintiff's claims orbit around (a) Defendants' allegation that Plaintiff's Motion Picture potentially infringes Defendants' intellectual property and (b) Defendants' cease and desist letters reflecting the same. The parties' communications precipitating this suit were all exchanged within the confines of the Central District of California. Plaintiff's allegedly infringing Motion Picture was produced by Plaintiff out of its principal place of business in Los

Angeles and was filmed in and around Los Angeles. Also, Defendants – with Plaintiff's original counsel – viewed Plaintiff's Motion Picture in Beverly Hills, California. *See Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 618 (S.D.N.Y. 1995) ("The 'center of gravity' for such [an infringement] claim is in the district where the alleged infringement occurred"); *Hernandez*, 761 F. Supp. at 990 ("The only locus of operative facts is Florida. Accordingly, this factor favors a trial in Florida"; motion to transfer to Southern District of Florida granted); *Wils*, 1991 U.S. Dist. LEXIS at *5 ("The events in question--namely, the relevant tax filings, and defendant's management of the partnership--took place entirely within California.") In contrast, none of the operative facts has their locus within the confines of the Southern District of New York. Consequently, this factor weighs heavily in favor of transfer.

      6.    The Availability of Process to Compel the Presence of Unwilling Witnesses

"The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989) (California accountants deemed crucial to this case and outside the subpoena power of the transferor court; motion to transfer to Central District of California granted); *see also Hernandez*, 761 F. Supp. at 990 (E.D.N.Y. 1991) (when majority of witnesses were beyond subpoena power of transferor court, transfer was favored to the district where these witnesses resided); *Twinde*, 2007 U.S. Dist. LEXIS at *4 (key non-party witnesses resided in the Northern District of California and could not be subpoenaed for trial if the case remained in New York). Although deposition testimony can usually be introduced at trial, live testimony is preferred. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S. Ct. 839 (1947) ("[c]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants"); *In re E. Dist. Repetitive Stress*, 850 F. Supp. at 194 ("[d]epositions, however, even when videotaped, are no substitute for live testimony.").

As set forth above, all relevant third parties now known reside and/or have their principal places of business in or around Los Angeles, within the subpoena power of the Central District of California, but beyond the subpoena power of the Southern District of New York. If this case remains in New York, Defendants (and Plaintiff, for that matter) will not be able to compel personal attendance and live testimony from relevant witnesses, the Jury will be subjected to endless deposition testimony, and justice will not be served. This factor weighs heavily in favor of transfer.

### 7. The Relative Means of the Parties

Maintenance of this civil action in the Southern District of New York will tax all parties -- Plaintiff and Defendants -- as all will be displaced from their principal places of business if litigation continues in this District. Plaintiff does not face any added expense litigating in the Central District of California but will, instead, be litigating in its backyard. This factor weighs in favor of transfer.

### 8. The Forum's Familiarity with the Governing Law

Plaintiff has not alleged any claims based on New York law, common or statutory. Instead, each of Plaintiff's claims presents a question of federal law. Thus, this factor is moot and does not weigh for or against transfer. *See Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998) ("When courts consider a potential venue's relative familiarity with the applicable law, they are referring to the application of state law in diversity cases . . . The same principle does not apply where, as here, federal law governs"; motion to transfer to Central District of California granted). This factor likewise favors transfer of this case to the Central District of California.

### 9. Trial Efficiency and the Interests of Justice

Transfer of this case promotes the efficient and cost-effective resolution of this civil action and is in the interests of justice. In addition to the efficiencies described above, transfer of the case to the Central District of California will significantly decrease the amount of necessary witness travel, a fact which weighs in favor of transfer even if witnesses are willing to travel.

*See Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*, 486 F. Supp. 529, 537-538 (S.D.N.Y. 1980) ("Even accepting plaintiff's point that many of the witnesses are employees of defendants and that their attendance at trial could be secured voluntarily, the cost and inconvenience of producing them for trial in this district is constant whether or not the witnesses are willing to attend"; motion to transfer granted.) Also, the public interest is served by "the local adjudication of local controversies." *Repetitive Stress*, 850 F. Supp. at 195. This is a Los Angeles-based dispute and should be adjudicated in Los Angeles.[4]

## IV. CONCLUSION

In short, not a single party or witness or document is located in New York. No part of the causes of action alleged by Plaintiff or the causes of action to be alleged by Summit in its counterclaim arose in New York. Not one of the nine factors the Court must consider favor keeping this case in New York. It appears that the only reason this case was filed in New York was for the convenience of Plaintiff's new counsel. That is not a proper basis to keep this case in this District. Plaintiff has counsel in California -- very familiar with this dispute. Based on the foregoing facts and law, Defendants respectfully move the Court for an order transferring this

---

[4] Cases tend to be tried faster in the Central District of California than in the Southern District of New York. (Bost Decl. ¶ 10, Ex. D.) Although the venues' relative docket congestion and trial efficiency would usually weigh in favor of transfer (*See Wyndham Associates v. Bintliff*, 398 F.2d 618, 619 (2d Cir. 1968)), Defendants acknowledge that this is a moot point given this Court's requirement that this matter be ready for trial by December 3, 2013 (Docket No. 5), as well as Your Honor's reputation for efficient adjudication of matters. The Central District of California also includes certain jurists known for a similar form of judicial efficiency, e.g., Hon. Stephen V. Wilson and Hon. Philip S. Gutierrez.

civil action from this District to the Central District of California.

                    Respectfully submitted,

                    **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP

Dated: June 28, 2013
      New York, New York      By:   */s/Theodore C. Max*
                                              Theodore C. Max (TM1742)

                                  30 Rockefeller Plaza, 39th Floor
                                  New York, New York 10112
                                  Telephone: (212) 653-8700
                                  Facsimile: (212) 653-8701
                                  tmax@sheppardmullin.com
                                  *Attorneys for Defendants Lions Gate Entertainment Corp. and Summit Entertainment, LLC*

Co-Counsel:

Jill M. Pietrini (*pro hac vice application to be filed*)
Paul A. Bost (*pro hac vice application pending*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701
jpietrini@sheppardmullin.com
pbost@sheppardmullin.com

SMRH:409220755.4